Two important questions arise in this cause, both of which affect the inheritable capacity of the respondent. The first involves the true construction of the section of our statute, which provides, that no person capable of inheriting real property under the provisions of our laws respecting descents, "shall be precluded from such inheritance "by reason of the alienism of any ancestor of such person," (1 R.S. 754, sec. 22,) and the precise point for decision is, whether the wordancestor, as used in this section, embraces collateral ancestors. The appellants insist that it does not, and only applies to lineal ancestors. After a full and careful examination of the numerous authorities referred to by the learned counsel for the respective parties, and some others met with in my own researches, I am satisfied that the term ancestor has no clear, settled and technical meaning confining it to lineal ancestors, and thereby precluding the court from inquiring into the general policy of the act, the evil existing, and the remedy which the legislature intended to apply. The revisors of our statutes who proposed the section to the legislature, have no doubt correctly stated in their notes its object. Their language is: "This section is intended to "change a very harsh rule of the existing law, by which a "person, not an alien himself, may sometimes be debarred "from inheriting." (3 R.S. 2d ed. 605.) That "harsh rule" was, that no one who was obliged to trace his descent through an alien, could inherit real estate. It recognized no distinction between lineal and collateral ancestors; and if a naturalized *Page 283 
or natural born citizen had to trace his descent through an alien ancestor, lineal or collateral, he could not inherit; and in this very case, the attempt of the appellants is, to apply this harsh rule to the respondent, while they seek refuge from it under this statute. The evil existing, the remedy applied, and the policy of the measure, are all plain to my mind, and relieve it from any doubt that the legislature intended to abolish thisharsh rule, and not permit the alienage of any ancestor, lineal or collateral, to deprive a naturalized, or natural born citizen of this state of his inheritance therein.
This conclusion is strongly confirmed by the consideration, that our statute is conceded on all sides, to be an abridgment of the English statute of 11 and 12 Wm. III. ch. 6, passed to effect the same object; and in which the terms ancestors,lineal or collateral, are used. Hence the inference is pretty plain, that our revisors and legislature used the terms anyancestor, without the qualifying words lineal or collateral,
with the intent of embracing ancestors of both classes. If they had designed to include the one, and exclude the other, it is almost, if not quite certain, that they would have used the appropriate qualifying words.
The second question is, whether the respondent was lawfully admitted a citizen of the United States, by the court of common pleas of Saratoga county, at the August term thereof, 1834, and this resolves itself into a question of evidence. The respondent produced the record of his admission, which was in due form, and according to law. The appellants claimed that this was not sufficient, and that the respondent was bound to go farther, and prove that he had in due form of law, more than two years before his admission, declared his intention to become a citizen of the United States, insisting that such declaration was a condition precedent, with which the respondent must shew he had complied; and the appellants further claimed, that notwithstanding it was stated in the record, that it appeared to the court that the respondent *Page 284 
had, more than two years before, declared in due form of law, his intention to become a citizen, yet that fact was open to inquiry, and they proceeded to give proof, rendering it somewhat doubtful whether the respondent ever had declared his intention in due form of law.
The simple question then is, whether the record is conclusive evidence of the fact, that a prior declaration of intention was made in due form of law. The weight of authority is decidedly in the affirmative. (Campbell v. Gordon, 6 Cranch R. 182;Stark v. Chesapeake Ins. Co. 7 ibid, 420; Spratt v.Spratt, 4 Pet. R. 408; Conk. Treat. Ed. 1842, 501;Ritchie v. Putnam, 13 Wend. R. 526; Priest v. Cummings,
16 ibid, 624 to 626; Commonwealth v. Towles, 5 Leigh R. 743; McDaniel v. Richards, 1 McCord R. 187; contra Vaux
v. Nesbitt, 1 McCord, Ch. R. 370.) These authorities accord with the great and general principle, that a record of the proceedings and judgment of a court of competent jurisdiction is conclusive evidence of the facts appearing therein. All courts look with favor on proceedings to admit aliens to citizenship, and it is just that they should; for the want of acquaintance with our laws and judicial proceedings, the unsettledness of their residences, in general, for some years, and the consequent liability to lose their documents and papers, should shield them from technical and sharp objections to their naturalization papers, whenever there appears to have been an honest intention to become a citizen, and comply with the laws of our country.
Judgment affirmed. *Page 285